UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PATRICIA BOKER,                    :
                                   :    NO. 1:07-CV-446
          Plaintiff,               :
                                   :    **OPINION & ORDER**
                                   :
     v.                            :
                                   :
                                   :
SECRETARY, DEPT. OF TREASURY       :
                                   :
          Defendant.               :

        This matter is before the Court on the Defendant's Motion

for Summary Judgment (doc. 9), Plaintiff's Response in Opposition

(doc. 14), and Defendant's Response in Support (doc. 15).  For the

following reasons, the Court GRANTS Defendant's Motion in part and

DENIES it in part (doc. 9).

**I.  BACKGROUND**

        The following facts are taken from Plaintiff's Complaint

(doc. 1), Defendant's Motion for Summary Judgment (doc. 9), and

Plaintiff's Opposition thereto (doc. 14).

        Plaintiff worked from April 2002 until March 2007 as a

revenue agent for the Internal Revenue Service ("IRS") staffing the

IRS phone bank providing customer service regarding tax-exempt

organizations (doc. 14).  As of the filing of the instant case, she

was still functioning as a revenue agent for the IRS but performed

the bulk of her work from home, coming into the office two half-

days per week (Id.).  Plaintiff suffers from asthma, which is

exacerbated by exposure to certain allergens (Id.).  In 2000, while

employed by Defendant in a different position, Plaintiff submitted a request for accommodation of an air purifier and also requested that she be allowed to work from home during the vacuuming and dusting of her office, which requests were granted (Id.). In late 2004, several new employees joined the phone bank and at least one of them wore perfume and used other personal products and cleaning agents to which Plaintiff reacted (Id.). In September of that year she was hospitalized for nearly a week because of an asthma attack (Id.). After that episode, she was treated by a pulmonary specialist and began rehabilitation as prescribed (Id.). Her treatment includes daily medication and weekly pulmonary rehabilitation sessions, and she has been told by various physicians that avoidance of triggers is the best treatment for her asthma (Id.).

After her 2004 hospitalization, Plaintiff sought, in January of 2005, to be moved to a different, more isolated, cubicle (Id.). She was permitted by Defendant to use different cubicles if needed (Id.). On February 28, 2005, Plaintiff submitted a formal request on the form required for requesting accommodation pursuant to a disability (Id.). On that form, Plaintiff requested that her "work station be placed away from the elements causing the asthmatic and allergic reactions" and that she be informed in advance when "special" chemicals or cleaners were to be used so she could avoid them (Id.). Defendant did not return the form to her for her to seek her physician's recommendations until March 23,

2005, after Plaintiff requested assistance from both union and Equal Employment Opportunity Commission ("EEO") representatives and repeatedly sought to discover why Defendant was delayed in his return of the form (Id.). Upon receipt of the form from Defendant, Plaintiff secured the necessary information from her physician and resubmitted the form to Defendant for its approval, as required (Id.). Defendant did not rule on Plaintiff's request until June 30, 2005, at which point Plaintiff's supervisor presented her with a memo that purported to deny the request (Id.). Plaintiff sought clarification and, on July 25, 2005, received a written denial that detailed her appeal rights (Id.).

Subsequent to submitting her request for accommodation, Plaintiff continued to move cubicles as needed, although she was told on April 1, 2005, that she needed to pick a permanent cubicle, whether her original one or one of the cubicles she had used on occasion, as the moving around was affecting her ability to service phone customers (Id.). On June 30, 2005, she was informed by the memo denying her request for accommodation that she had three choices: she could remain in her current position and location; seek disability retirement; or seek a different position at the IRS that would be less likely to expose her to irritants (Id.). Plaintiff filed an EEO complaint of discrimination on May 7, 2005, alleging discrimination for delay in responding to her request for accommodation and retaliation for prior EEO complaint activity (doc. 9). Subsequent to that, she requested and was granted

accommodations of varying kinds in August 2006, January 2007 and March 2007 (Id.).

Plaintiff states that she had requested and been granted FMLA leave in 2004 and 2005 for her asthma and its related treatments (Id.). In August of 2005, Plaintiff requested that she be allowed to move cubicles because a co-worker used a desk cleaner, to which Plaintiff reacted (Id.). The request was denied (Id.). Plaintiff requested FMLA leave again in 2006 based on the same medical facts, but this request was denied (Id.). She was charged with being "AWOL" on at least two occasions in early 2006 before her appeal of the FMLA decision was resolved in her favor, and Defendant made the necessary changes to her payroll (Id.). She appears to allege that the reason for the 2006 FMLA denial was her request for accommodation in August of 2005 (doc. 1).

In addition, on March 23, 2005, the cubicle area in which Plaintiff worked was treated for pests using a spray pesticide (doc. 14). Plaintiff had an allergic reaction to the treatment and eventually had to leave the building in order to deal with the resultant breathing problems (Id.). On April 4, 2005, her supervisor presented Plaintiff "with the chemical product description" for the pesticide used in the office and "demanded that [Plaintiff's] physician identify the specific chemicals in the product" to which Plaintiff was allergic (Id.). Plaintiff's physician responded with a note saying that he did not want to inject his patient with poison, and Plaintiff claims she sought

counseling because she was concerned that someone at work wanted her to be injected with poison so she would suffer harm (<u>Id</u>.).

Plaintiff filed her Complaint in the instant case in June of 2007 (doc. 1), alleging disability discrimination and retaliation. Defendant's Motion for Summary Judgment was filed in January 2009 (doc. 9). The matter is fully briefed and ripe for the Court's consideration.

## II. LAW AND ANALYSIS

Summary judgment is appropriate when there is no dispute as to a material question of fact and one party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. This Court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. <u>See</u> <u>LaPointe v. United Autoworkers Local 600</u>, 8 F.3d 376, 378 (6th Cir.1993). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). Only disputed material facts, those "that might affect the outcome of the suit under the governing law," will preclude summary judgment. <u>Id</u>. at 248. The function of the court in assessing a summary judgment motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id</u>. at 249. "The mere existence of a scintilla of evidence in support of the

-5-

[non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Id. at 252. If after reviewing the record as a whole a rational fact-finder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Plaintiff claims that Defendant violated the Rehabilitation Act of 1973; violated Title VII; and retaliated against her for engaging in "protected EEO activity" (doc. 1). However, the claims are conflated in the Complaint. After a thorough examination of the Complaint (doc. 1) and the motions and supporting documents before the Court, the Court understands Plaintiff to allege that Defendant violated the Rehabilitation Act (1) because it failed to timely respond to her request for accommodation; and (2) because it retaliated against her for her repeated attempts to seek accommodation.[1]

---

[1] Both Plaintiff and Defendant refer to alleged retaliation in violation of Title VII but this case rests on disability, which is not a class protected by Title VII. 42 U.S.C. § 2000e-2(a)(forbidding employment discrimination on the basis of race, color, religion, sex, or national origin); 42 U.S.C. § 2000e-3(a)(forbidding an employer from discriminating against an employee because he or she opposed any practice made unlawful by Title VII or, inter alia, made a charge in a Title VII investigation or proceeding). Instead, disability-based discrimination and retaliation claims fall under the rubric of the ADA and the Rehabilitation Act, so the proper claim is an alleged violation of the Rehabilitation Act.

## A. Disability Discrimination

Plaintiff alleges that she was discriminated against because of her disability (doc. 1). As a federal employee, the Americans with Disabilities Act does not provide Plaintiff a cause of action, but the Rehabilitation Act of 1973 may, and the Sixth Circuit reviews claims brought under the Rehabilitation Act as it does claims brought under the Americans with Disabilities Act. Doe v. Salvation Army in the United States, 531 F.3d 355, 357, citing Brenneman v. MedCentral Health Sys., 366 F.3d 412, 418 (6th Cir. 2004). The Rehabilitation Act prohibits qualified employers from discriminating against employees "solely by reason of her or his disability." 29 U.S.C. § 794(a). The Sixth Circuit, unlike most other circuits, requires that a plaintiff alleging disability discrimination show that the adverse employment action was taken solely because of a disability. Macy v. Hopkins Cty. Sch. Bd. of Educ., 484 F.3d 357, 363 n.6 (6th Cir. 2007)(collecting cases re same and reaffirming Sixth Circuit's requirement).

Plaintiff attempts to meet this burden by asserting that Defendant discriminated against her by delaying his response to her request for accommodation (doc. 1). Absent direct evidence of discrimination, the Court applies the three-step burden-shifting McDonnell Douglas framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248 (1981). The initial burden, therefore, falls on Plaintiff to establish her prima facie case of discrimination. If she

succeeds in doing this, the burden of production then shifts to Defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action, which, in the third <u>McDonnell Douglas</u> step, Plaintiff must rebut as pretext. <u>See</u> <u>Burdine</u> 450 U.S. at 253; <u>Macy</u>, 484 F.3d at 364. To survive summary judgment, Plaintiff must proffer evidence sufficient to create a genuine issue of material fact at each stage of the <u>McDonnell Douglas</u> inquiry. <u>Jones v. Potter</u>, 488 F.3d 397, 404 (6th Cir. Ohio 2007).

To establish a <u>prima</u> <u>facie</u> case of disability-based discrimination under the Rehabilitation Act, Plaintiff must show: (1) that she is disabled; (2) that she is otherwise qualified to perform the job requirements with or without reasonable accommodation; (3) that she suffered an adverse employment action; (4) that her employer knew or had reason to know of her disability; and (5) that, following the adverse employment action, either she was replaced by a non-disabled person or her position remained open or, in the alternative, she was treated differently than similarly-situated employees. <u>Jones</u>, 488 F.3d at 404.

The only factors upon which the parties appear to agree is that Plaintiff was otherwise qualified to perform the job and that Defendant knew or had reason to know of her asthma.[2] The remaining three factors are contested. Defendant argues that Plaintiff's asthma is not a "'long-term' physical impediment that

---

[2] Although Defendant contests knowledge in the retaliation context, it does not appear to be contested here.

substantially limited major life activity" and she is therefore not disabled as contemplated by the Rehabilitation Act; that the delay in responding to her request does not constitute an adverse employment action; and that she has not presented evidence of a comparator employee or otherwise presented evidence tending to indicate that the delay in response was motivated by disability animus (doc. 9). Plaintiff argues that her asthma is a disability under the law and that the delay was an adverse employment action (doc. 14).

### a. Plaintiff's Disability

To be considered disabled under the Rehabilitation Act, an individual must (1) have a physical or mental impairment that "substantially limits" him or her in at least one "major life activity," (2) have a record of such an impairment, or (3) be regarded as having such an impairment. DiCarlo v. Potter, 358 F.3d 408, 418 (6th Cir. 2004) (quoting Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002), citing to 29 U.S.C. § 705(20)(B) (Rehabilitation Act definition) and 42 U.S.C. § 12102(2) (ADA definition)). "Substantially limits" means that an individual is either unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life

activity. <u>See</u> 29 C.F.R. § 1630.2(j)(1); <u>Penny v. United Parcel Serv.</u>, 128 F.3d 408, 414 (6th Cir. 1997).

Plaintiff suffers from asthma, which is exacerbated by exposure to certain allergens (doc. 14). She takes medications on a daily basis and participates in weekly pulmonary rehabilitation sessions for her asthma (<u>Id</u>.). She notes that an untreated asthma attack, which could be triggered by such things as perfume in the workplace, could ultimately be fatal (<u>Id</u>.). Based on what Plaintiff has reported to her physician, to Defendant in the course of her attempts to secure accommodations, and to the Court in her briefing of this case, it is clear, as Plaintiff notes, that her asthma is "far more severe" than "a mild case of asthma" (<u>Id</u>.). In her Memorandum in opposition to Defendant's summary judgment motion, Plaintiff presents a list of examples of major life activities and then avers that she has a "severe pulmonary condition, which requires breathing treatments and pulmonary rehabilitation on a weekly basis" and states that her condition "seriously affects her ability to breathe" (<u>Id</u>.).[3] The Court

---

[3] Plaintiff then seems to argue that Defendant's attempts to accommodate Plaintiff's requests to, e.g., move to a different cubicle, somehow prove that Plaintiff is disabled because, Plaintiff argues, Defendant would only seek to accommodate someone who was disabled (<u>Id</u>.). In fact, Plaintiff argues that Defendant would "certainly not accommodate a non-disabled person" (<u>Id</u>.). The Court cannot subscribe to Plaintiff's rationale as it has no basis in the vast and deep body of disability law. In addition, Plaintiff's position runs contrary to the policy of encouraging employers to accommodate the reasonable requests of employees even when the employee doesn't have a disability that rises to the level that would force an employer to do so under federal law. The Court would hope that, for example, someone

construes this as an assertion that Plaintiff is substantially limited in the major life activity of breathing and proceeds under that assumption.

Asthma can, in some cases, qualify as a disability under the Rehabilitation Act. See, e.g., Cassidy v. Detroit Edison Co., 138 F.3d 629, 633 (6th Cir. 1998)(noting, without more, that district court found plaintiff disabled because her asthma substantially limited her major life activity of breathing). Suffering from asthma, however, does not constitute a per se substantial limitation on the major life activity of breathing, and courts engage in an individualized inquiry, including, until recently, the effect of medication on the condition, in order to determine whether a condition substantially limits a major life activity. See Kropp ex rel. S.K. v. Me. Sch. Admin. Union # 44, 2007 WL 551516, at * 17 (D. Me. Feb. 16, 2007) (any limitation must be substantial even when medications and treatments are in place), citing Sutton v. United Air Lines, 527 U.S. 471, 481-83 (1999)(superceded by ADA Amendments Act of 2008, Pub.L. No. 100-325, 122 Stat. 3553 (2008)); White v. Honda of Am. Mfg., 241 F.Supp.2d 852, 856 (S.D. Ohio 2003) (collecting cases).

Asthma has typically been found to rise to the level of a substantial limitation on the major life activity of breathing where the plaintiff has a long history of asthmatic attacks and

---

whose disability does not qualify as such under the ADA would nonetheless be treated with respect and responsiveness by her employer.

endures numerous and severe restrictions on daily activities as a result of the condition. See, e.g., Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1245 (10th Cir. 2004) ("Since early childhood, [Plaintiff's] asthma has limited her activities. She has been instructed by her doctors to avoid crowds, cigarette smoke, people wearing perfume, and outdoor activities. She must avoid being active at night, remain indoors during windy conditions, and cannot be in enclosed spaces with cleaning agents.... [E]ven with ... medications she experiences symptoms most of the time."); Geuss v. Pfizer, Inc., 971 F.Supp. 164, 169 (E.D. Pa. 1996) (Plaintiff had "taken medication for his asthma on a daily basis for as long as he can remember," "had 1-2 asthma attacks a day," which were triggered by "[e]ven minor instances of physical exertion," and "force[d] him to avoid certain pets, cigarette smoke, perfume, and fresh paint.").

Where a plaintiff suffers asthma attacks only in response to particular stimuli and is able to engage in almost all normal life activities, courts have been less likely to conclude that the plaintiff is substantially limited in the major life activity of breathing. See, e.g., Ventura v. City of Independence, 108 F.3d 1378, 1997 WL 94688, at *2 (6th Cir. 1997)(no substantial limitation from asthma where plaintiff had difficulty breathing when exposed to diesel fumes, high humidity, and extreme temperatures but was able to play sports, perform calisthenics, walk, play the saxophone, run, sing, and water ski); Minnix v.

City of Chillicothe, 205 F.3d 1341, 2000 WL 191828 (6th Cir. 2000)(no disability where asthma was not "as severe, long term, or permanent" as to be substantially limiting because in the absence of diesel fumes plaintiff was able to breathe normally); DeCastro v. Lahood, Sec'y, U.S. Dept. of Transportation, 2009 WL 1067030 (E.D. Ny. April 21, 2009)(finding the limitations of asthma attacks, windedness and wheezing only impacted plaintiff's major life activity "during an exacerbation of symptoms" and thus no disability within the Rehabilitation Act found); Muller v. Costello, 187 F.3d 298, 314 (2d Cir. 1999) (Plaintiff's "substantial physical activity without encountering debilitating allergens cuts against his claim of disability. Simply put, there is not enough evidence of off-the-job breathing problems to find a substantial limitation of that life activity."); Droutman v. N.Y. Blood Center, Inc., 2005 WL 1796120, at *6 (E.D. N.Y. July 27, 2005) (Plaintiff's "ten or so asthma attacks were apparently limited to her working environment, self-medicated with an inhaler, and mitigated by breathing exercises and movement to an area of fresh air[.] [Plaintiff] was also generally capable of performing her job assignments [and] thus did not have a 'disability' as defined by the ADA...."); Gaddy v. Four B Corp., 953 F.Supp. 331, 337 (D.Kan. 1997) (finding that a person was not substantially limited in her ability to breathe where she was able to control her asthma with an inhaler or a breathing machine).

Plaintiff has produced, inter alia, notes from her

-13-

physicians, the EEO reviewing physician, a pulmonary function exercise, and two different rehabilitation sessions (doc. 14). Although Plaintiff reported in 2005 to her pulmonologist that when she tries to do "any activity" she develops shortness of breath and has to "rest for 10-30 minutes to recover," after a physical exam and accompanying tests revealed no wheezing or other troubling lung sounds and revealed otherwise normal findings, the physician himself noted that he was concerned that Plaintiff "may have symptoms that are considerably out of proportion to any physiological changes" (Id.). In addition, the physician who performed her pulmonary function exercise test in 2005 was left with the impression that she had a moderate exercise limitation, "with an adequate respiratory reserve" and that the likely reason for her exercise limitation was "deconditioning"(id.); in other words, he attributed her exercise limitation to her lack of physical exercise, not to asthma. Plaintiff has produced no evidence regarding the effect her asthma has on her outside the work context but has produced evidence indicating that, absent the exposure to the irritants, she is able to perform all job functions (doc. 14).

On the other hand, in 2000, one of Plaintiff's physicians filled out a request for reasonable accommodation and noted that her "severe asthma and allergic syndrome" is a chronic and lifelong one and that an accommodation of an air purifier at work would help but that she could still experience "difficulties after cleaning

days or if exposed to toxins" (Id.). In addition, Plaintiff produced a physician statement by Dr. Niemes in 2005 wherein he stated that "It is highly probable [that Plaintiff will suffer injury or harm if not accommodated] in view of the fact that she has required medication regularly while at work, requires pulmonary rehabilitation, environmental control measures...and allergy immunotherapy...injections just to function and perform day to day activities" (Id.).

Under disability law, at least as it existed at the time of Plaintiff's complaints, it is not enough that she have asthma, or even that her asthma be severe-her treated asthma must substantially limit one or more major life activity. Sutton, 527 U.S. at 482. The evidence produced by Plaintiff appears to put her in the camp of the plaintiffs in Ventura, Minnix, DeCastro, Muller, Droutman and Gaddy, where no disability was found because the plaintiffs' asthma did not substantially limit the major life activity of breathing. According to the record, Plaintiff's asthma is triggered by irritants and allergens she is exposed to at work, she responded well to the pulmonary rehabilitation treatments, she is able to treat attacks at work by either removing herself from the exposure and/or with medication, and she would be able to perform all job functions absent the irritants and allergens (docs. 9 and 14). Even drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff has not produced evidence creating a genuine issue of material fact as to whether her treated asthma

substantially limits the major life activity of breathing. However, assuming, _arguendo_, that it does and that Plaintiff's asthma is a disability under the Rehabilitation Act, the Court proceeds to the remaining two elements of the _prima facie_ case.

### b. Adverse Employment Action

The Sixth Circuit defines an "adverse employment action as a "materially adverse change in the terms and conditions of [the plaintiff's] employment." Smith v. City of Salem, 378 F.3d 566, 575 (6th Cir. 2004) (quoting Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999)). Further, for purposes of proving disparate treatment (but not retaliation), "[a] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 594 (6th Cir. 2007). Such a change "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Id., quoting Ford v. GMC, 305 F.3d 545, 553 (6th Cir. 2002)(also noting that Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53 (2006) did not alter the previous Sixth Circuit approach to analyzing adverse employment actions in non-retaliation claims).

Here, Plaintiff appears to argue that the delays in processing her accommodation requests and "the granting of

temporary reasonable accommodation over a period of years" amount to materially adverse employment actions (doc. 14). Defendant argues that permitting Plaintiff to move cubicles as needed, communicating to other employees the importance of not wearing perfumes to work, and seeking to understand which chemicals Plaintiff specifically reacts to demonstrate attempts to work with and accommodate Plaintiff's requests rather than actions adverse to Plaintiff (doc. 9).

The Court believes that Defendant's actions were neither as malicious as Plaintiff portrays them nor as benevolent as Defendant portrays them. Regardless, they do not rise to the level of an adverse employment action in the context of a disability discrimination claim. While the delay in responding to Plaintiff's request for accommodation created more stress and aggravation for Plaintiff and is not behavior this Court condones, it did not effect a material change in the terms and conditions of her work. The same is true for periodically changing cubicles—while the parties appear to agree that such cubicle-shuffling may have affected Plaintiff's ability to perform her job as well as she might otherwise have been able, the shuffling cannot be construed as an adverse change in the terms and conditions of her work in part because it was a solution that Plaintiff herself requested (doc. 14). Even if it was an imperfect solution, there is no evidence that it rose to the level of a termination, a demotion, a loss in benefits, a decrease in responsibilities or the like.

Therefore, in this context, the Court finds that Plaintiff has not created a genuine issue of material fact with respect to an adverse employment action.

Nonetheless, the Court notes that even if Plaintiff's asthma were found to rise to the level of a disability under the law and Plaintiff were successful in a showing of an adverse employment action such that the fourth prong were satisfied, she did not produce any evidence of a similarly-situated comparator employee to satisfy the fifth prong of the disability discrimination prima facie case. In Plaintiff's deposition, she named an employee who had quickly received a special chair in response to his request for accommodation, but she noted that he, unlike Plaintiff, was not a union member (doc. 9). Notably, Plaintiff offered that her union membership, not her alleged disability, was the reason for Defendant's delay in processing her request (Id.). Putting aside Plaintiff's statement that tends to indicate that she herself did not believe Defendant to be motivated by disability animus but, instead, anti-union bias, Plaintiff's allusion to this other employee simply does not satisfy the comparator employee standard. See Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)(plaintiff is required to prove that all of the relevant aspects of her employment situation were "nearly identical" to those of the comparator employee). Therefore, the Court finds that Plaintiff has failed to make a prima facie showing of disability discrimination.

### c. Failure to Accommodate

In her Complaint and her Memorandum opposing Defendant's summary judgment motion, Plaintiff obliquely alludes to a failure-to-accommodate claim (docs. 1 and 14). However, Plaintiff neither argues this claim with its corresponding case law nor presents facts necessary to support such a claim. Defendant argues that Plaintiff failed to exhaust a failure-to-accommodate claim, and that the only disability claim properly before the Court is Plaintiff's disparate treatment claim (doc. 9). Plaintiff's EEO complaint presented two questions: whether the IRS discriminated against her when it delayed its response to her request for accommodation and whether the IRS retaliated against her by failing to accommodate her (Id.). Therefore, the Court finds that, to the extent one is alleged, Plaintiff did not exhaust a failure-to-accommodate claim and such a claim is not properly before the Court. Haithcock v. Frank, 958 F.2d 671 675 (6th Cir. 1992).

However, even if Plaintiff had somehow exhausted this claim and the Court were to consider it, on these facts the Court would find that Plaintiff could not survive a motion for summary judgment on a failure-to-accommodate claim. In Cassidy v. Detroit Edison Co., 138 F.3d 629, 634-35 (6th Cir. 1998), the plaintiff had respiratory problems and was transferred from a job in the plant to the computer center in corporate headquarters, which had filtered and air-conditioned air. While working there, fumes from a room painted the night before caused plaintiff problems that required an

emergency room visit.  Id. at 632.  Plaintiff did not return to work, but provided her employer with a doctor's note stating that she needed a "workstation free of exposure to any agent that may trigger asthma or cause a drop in peak flow and that is well ventilated."  Id. at 632.  The Sixth Circuit concluded that summary judgment was properly entered for the defendant because plaintiff failed to meet her burden of proposing an objectively reasonable accommodation.  Id. at 635.  Specifically, the proposed accommodation of essentially an allergen-free workplace was too vague to inform the defendant of what was needed, or had been attempted and was otherwise unavailable.  Id.  In contrast, in Benaugh v. Ohio Civil Rights Com'n, 278 Fed. Appx. 501, 509 (6th Cir. 2008), the Sixth Circuit found that a plaintiff's request for an office with a climate control unit, because extremes of temperature made her symptoms worse and triggered asthma attacks, was not too vague to be understood, and was not unavailable in the defendant's offices since one or more exterior offices were vacant.

Here, like the Cassidy plaintiff, Plaintiff requested that her "work station be placed away from the elements causing the asthmatic and allergic reactions" (doc. 9).  This request does not have the specificity of the Benaugh request and therefore was not an objectively reasonable accommodation.  Therefore, even if the Court were to construe Plaintiff's Complaint to properly present a failure-to-accommodate claim and Plaintiff had satisfied the other elements of the claim, the claim would not survive Defendant's

-20-

Motion for Summary Judgment.

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's disability discrimination claim, Count I.

## B. Retaliation

Plaintiff alleges that Defendant retaliated against her by, inter alia, delaying his response to her request for reasonable accommodation and by "presenting her with the chemical product description" for a pesticide used in the office and "demand[ing] that her physician identify the specific chemicals in the product" to which she was allergic; Plaintiff contends he did so because she engaged in a protected activity (docs. 1 and 14).

The Rehabilitation Act prohibits an employer from retaliating against an employee for engaging in a statutorily protected activity. Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir. 2001). A plaintiff "need not show that she is under a 'disability' to maintain a claim under the Rehabilitation Act based on the theory that her employer retaliated against her because she engaged in legally protected activities." Ferrero v. Henderson, 341 F.Supp.2d 873, 887 (S.D. Ohio 2004) (citing Davis v. Flexman, 109 F.Supp.2d 776, 801-02 (S.D. Ohio 1999) and Barrett v. Lucent Technologies, Inc., 36 F.Appx. 835, 840 (6th Cir. 2002)). Plaintiff relies on circumstantial, rather than direct, evidence of retaliation; therefore, the McDonnell Douglas framework applies. Gribcheck, 245 F.3d at 550 (citing McDonnell Douglas Corp., 411

U.S. at 802; <u>Burdine</u>, 450 U.S. at 253).

A <u>prima</u> <u>facie</u> case of retaliation has four elements: 1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an employment action adverse to the plaintiff; and 4) the protected activity and the adverse employment action are causally connected. <u>Id</u>. (citing <u>Wrenn v. Gould</u>, 808 F.2d 493, 500 (6th Cir. 1987)).

Plaintiff indisputably engaged in the protected activity of pursuing accommodations as provided in the Rehabilitation Act (doc. 1). However, the parties dispute whether Defendant knew that she had engaged in that activity; the existence of an adverse employment action; and the causal connection between any such action and Plaintiff's protected activity.

First, Defendant argues that Plaintiff's supervisor, James Blair, did not know that Plaintiff had met with an EEO counselor until after he sent her the letter in which he outlined the steps Defendant had taken to accommodate Plaintiff's allergies and stated that she had three options: remain in her current position, seek disability retirement or apply for other positions (docs. 9 and 15). Second, Defendant argues that even if Defendant knew that Plaintiff had engaged in protected activity, Plaintiff suffered no adverse employment action (<u>Id</u>.). Third, Defendant argues that Plaintiff cannot show that Defendant's legitimate nondiscriminatory reason for its actions towards Plaintiff was

pretextual (<u>Id</u>.).

### a. Knowledge

Plaintiff does not specifically address the elements of the <u>prima</u> <u>facie</u> case. However, the Court has thoroughly examined the record and finds that a genuine issue of material fact exists with respect to Defendant's knowledge of Plaintiff's protected activity. While Blair may not have known that Plaintiff filed an EEO complaint at the time he sent the letter, he certainly knew that she had repeatedly sought accommodation for what she believed to be a disability. Plaintiff presents a record of multiple interactions with various managers and other personnel regarding her use of other cubicles and her asthma (doc. 14). At a minimum, reasonable minds could disagree on what Blair knew or should have known and when, so the second prong of Plaintiff's <u>prima</u> <u>facie</u> retaliation claim is satisfied.

### b. Adverse Employment Action

As to the adverse employment action, as noted above, the Sixth Circuit generally defines such action as a "materially adverse change in the terms and conditions of employment." <u>Hollins v. Atlantic Co.</u>, 188 F.3d 652, 662 (6th Cir. 1999). However, in <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006), the Supreme Court abrogated this "terms and conditions" approach in the retaliation context. Under <u>Burlington Northern</u>, to establish an adverse employment action in a retaliation claim, "a plaintiff must show that a reasonable employee would have found the

challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id</u>. at 68.

Plaintiff argues that the delays in processing her accommodation requests, "the granting of temporary reasonable accommodation over a period of years, the denial of FMLA leave and the charging of [Plaintiff] with AWOL for medically excused absences" amount to materially adverse employment actions (doc. 14).[4] She offers these actions as evidence of Defendant's discriminatory intent (<u>Id</u>.). While the Court found these actions did not amount to an adverse employment action in the disparate treatment context, the application of the reasonable-employee standard in the retaliation context leads to a different result. The Court finds that a reasonable employee could be dissuaded from engaging in protected activity based on witnessing the delay suffered by Plaintiff, the continual cubicle-shuffling and, perhaps most importantly in this context, the denial of FMLA leave and the

---

[4] The denial of FMLA leave and charging Plaintiff with AWOL, Defendant argues, are not claims Plaintiff can properly assert because she did not administratively exhaust them (docs. 9 and 14). Defendant misapprehends the FMLA and AWOL issues presented. First, unlike with a Title VII or Rehabilitation Act claim, a plaintiff is under no obligation to exhaust an FMLA claim. <u>See</u> <u>Krohn v. Forsting</u>, 11 F.Supp.2d 1082, 1085 (E.D. Mo. 1998) (holding that "[t]he FMLA does not contain an exhaustion requirement"). Second, Plaintiff does not bring a claim against Defendant for violation of the FMLA; instead, Plaintiff points to the denial of FMLA leave and the charging of AWOL as evidence of discrimination and retaliation. Defendant's exhaustion arguments are misplaced.

charging of AWOL.  Therefore, the Court proceeds to the final prong of Plaintiff's _prima_ _facie_ case of retaliation, the causal connection.

### c.  Causal Connection

To satisfy the fourth prong of her _prima_ _facie_ retaliation claim, Plaintiff must adduce evidence of a causal connection between the protected activity (here, seeking reasonable accommodation) and the adverse employment action (here, the delay in responding to the request, the cubicle-shuffling, the denial of FMLA leave and the charging of AWOL).  See Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).  Plaintiff is required to produce sufficient evidence to create an inference that the "adverse action would not have been taken had the plaintiff not filed a discriminatory action."  Id.  Causation can be inferred from circumstantial evidence, _id_., but to withstand summary judgment, causation must be shown by evidence "sufficient to raise the inference that protected activity was the likely reason for the adverse action," Zanders v. Nat'l R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir. 1990) (internal quotes omitted).

Plaintiff began seeking accommodations for her asthma in 2000, when she requested that she be allowed to work from home during the vacuuming and dusting of her office, which request was granted (doc. 14).  Then, after being hospitalized in late 2004 for an asthma attack that may have been triggered by exposure to co-workers' perfumes, Plaintiff sought, in January of 2005, the

accommodation of moving to a different, more isolated, cubicle (Id.). Subsequent to this request, Plaintiff continued to move cubicles as needed, although she was told in April of 2005 that she needed to pick a permanent cubicle (Id.). Her January 2005 request for accommodation was formally denied in July 2005 (Id.). Plaintiff again requested that she be allowed to move cubicles in August 2005, which request was denied (Id.). Subsequent to that, she requested and was granted accommodations of varying kinds in August 2006, January 2007 and March 2007 (Id.). Plaintiff filed an EEO complaint of discrimination on May 7, 2005, alleging discrimination for delay in responding to her request for accommodation and retaliation for prior EEO complaint activity (doc. 9).

Plaintiff had requested and been granted FMLA leave in 2004 and 2005 for her asthma and its related treatments (doc. 14). She requested leave again in 2006 based on the same medical facts, but this request was denied (Id.). She was charged with being AWOL on two occasions in early 2006 before her appeal of the FMLA decision was resolved in her favor, which led to Defendant rectifying her pay and benefits (Id.).

Plaintiff also appears to present Defendant's request for information from her physician regarding the specific irritants contained in the pesticide as additional evidence of a causal connection. Plaintiff interpreted Defendant's request for this information as a hostile act, but the evidence presented to this

Court indicates otherwise. In her February 2005 request for accommodation, Plaintiff asked that she be informed in advance when "special" chemicals or cleaners were to be used so she could avoid them (doc. 9). Defendant, by requesting that she attempt to identify the chemicals used in the pesticide that caused her reaction, appears to have attempted to elicit from Plaintiff a better understanding of what "special" chemicals are in order to avoid their use in the future. Plaintiff interpreted this request as a demand that she inject herself with poison, an interpretation this Court does not share. Instead, the evidence shows that Defendant merely sought clarification regarding Plaintiff's allergens; the evidence certainly does not show an intent to poison Plaintiff. The Court does not find that Defendant's attempt to elicit more information regarding Plaintiff's response to various chemicals, especially given the wording of her request for accommodation, indicative of animus or retaliation.

However, the Court does find that the 2006 denial of FMLA and charging of AWOL could be found by a rational jury to be retaliatory measures taken against Plaintiff for her repeated requests for accommodation. Plaintiff was approved for FMLA leave in 2004 and 2005, but only began to really agitate for accommodations, including filing her official request for accommodation and her EEO complaint, in 2005, after that approval had been given (doc. 14). Plaintiff's February 2005 request for accommodation was denied, as was her August 2005 request (Id.).

Despite presenting supporting evidence in 2006 nearly identical to the evidence submitted in 2004 and 2005, Plaintiff's 2006 FMLA request was denied. A rational jury could find that the only significant difference between the 2004/2005 requests and the 2006 was the protected activity Plaintiff engaged in the months leading up to the 2006 request.

Therefore, the Court finds that Plaintiff has made a prima facie showing of retaliation. Defendant, however, has not produced a legitimate nondiscriminatory reason for having denied her 2006 FMLA request, so the Court need not reach Plaintiff's pretext argument.

The Court therefore DENIES Defendant's Motion for Summary Judgment with respect to Plaintiff's retaliations claims, Counts II and III.

## III.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's disability discrimination claim and DENIES Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claims (doc. 9) and SETS this case for a final pretrial conference on November 12, 2009 at 2:00 p.m. and for a two-day trial by jury on December 1, 2009, at 9:30 a.m.


                    SO ORDERED.

Dated: September 28, 2009     /s/ S. Arthur Spiegel
                              S. Arthur Spiegel

                              -28-